IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

K.M., *by and through her Parents and Next Friends, C.M. and C.M.M.*

    Plaintiffs,

v.

BOARD OF EDUCATION OF
MONTGOMERY COUNTY

    Defendant.

Civil Action No. PX-17-2759

******

**MEMORANDUM OPINION**

Pending before the Court is Defendant Board of Education of Montgomery County, Maryland's motion to dismiss the Amended Complaint for failure to exhaust administrative remedies under the Individuals with Disabilities Education Act. ECF No. 32. The matter has been fully briefed, and a hearing on the motion took place on January 24, 2019. For the following reasons, the Court GRANTS Defendant's motion.

**I.    Background[1]**

Plaintiff K.M. is a nineteen-year-old student at Walter Johnson High School, a public high school in Montgomery County, Maryland. ECF No. 30 ¶¶ 7, 11. K.M. is autistic and "primarily nonverbal," rendering "typical forms of communication difficult, if not impossible." *Id.* ¶ 8. K.M. has been classified by Defendant Board of Education of Montgomery County ("MCPS")[2] as a student with a disability. *Id.* ¶7. She is expected to receive a Maryland High

---

[1] The Court accepts as true the facts pleaded in K.M.'s Amended Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

[2] While Plaintiffs identify Defendant as "Montgomery County Public Schools" in their filings, Defendant states that its proper name is "Board of Education of Montgomery County," although Defendant continues to use the acronym "MCPS". *See* ECF Nos. 32 at 1, 42 at 1. For simplicity, the Court similarly retains the acronym. The Clerk is directed to change Defendant's name in the case caption to "Board of Education of Montgomery County".

1

School Certificate of Program Completion at the end of the school year in which she turns 21. *Id.* ¶ 11.

MCPS has tried different methods to communicate with K.M., such as using an iPad with her to select picture icons or type responses, asking "yes or no" questions, and providing the help of a "communication partner." *Id.* ¶ 10. Prior to the 2016-17 school year, K.M. was in classes outside of the general education setting, where she exhibited "interfering behaviors" such as hitting her head on the desk, throwing herself on the floor, acting aggressively towards staff, and tearing, pulling, and picking at classroom materials. *Id*. After being moved into grade-level classes in the 2016-17 school year, the frequency and severity of K.M.'s distress diminished. *Id.* ¶ 14.

Outside of school, K.M. also began working with an independent facilitator trained in a facilitated communication technique called Rapid Prompting Method ("RPM"), in which the facilitator holds a laminated letterboard and K.M. points to letters. *Id.* ¶ 16. The facilitator "resets" the letterboard between each letter, allowing K.M. to refocus her attention. *Id.* ¶ 17. K.M. uses RPM to "communicate with the world." *Id.* ¶ 16. In fact, K.M. has become so proficient with RPM that she "read *The Great Gatsby* and *Animal Farm*, and showed great understanding of the books by using a laminated letterboard held by a communication facilitator to answer questions and express her thoughts about the two novels." *Id.* ¶ 25. K.M.'s parents thus requested that MCPS provide a trained facilitator that would reset the letterboard as it does for the students in the School's Facilitated Communication Pilot Program, but MCPS refused. *Id. ¶* 19-20. MCPS' Facilitated Communication Pilot Program employs facilitated communication techniques, including the use of a letterboard. *Id.* ¶¶ 12, 15, 17. K.M. is not in this program. *Id.* ¶ 13.

After MCPS refused the parents' request to provide this type of facilitated communication to K.M., the parents filed this action on their daughter's behalf, alleging that MCPS' refusal to provide RPM denied K.M. reasonable accommodations in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq*. Plaintiffs also moved for preliminary injunction on September 28, 2017, specifically requesting that this Court order "that the communication facilitator at MCPS be allowed to hold the letterboard for K.M." in class. ECF No. 4-1 at 13. MCPS opposed and moved to dismiss for lack of subject matter jurisdiction, arguing that K.M.'s claim is also one pursued under the Individuals with Disabilities Education Act ("IDEA"), and so Plaintiffs are required to exhaust administrative remedies prior to filing suit in federal court for any related claim. ECF Nos. 7, 11.

In response to MCPS' motion to dismiss, Plaintiffs did not dispute their failure to exhaust administrative remedies under the IDEA. ECF No. 15. Rather, Plaintiffs maintained that MCPS' actions squarely violated the ADA, not the IDEA, and thus exhaustion was not required. *Id*.

After reviewing the pleadings, the Court informed the parties that it intended to grant Defendant's motion to dismiss. The Court more particularly conveyed that, pursuant to *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), the Court viewed the crux of Plaintiffs' claims to implicate K.M.'s provision of a fair and appropriate public education ("FAPE") under the IDEA, regardless of whether an IDEA claim was pleaded formally. Accordingly, the Court offered the parties the option to stay the federal case so that Plaintiffs could exhaust administrative remedies and thereafter return to pursue their claims. To be clear, the Court never *ordered* Plaintiffs to pursue exhaustion.[3] ECF No. 20. Had Plaintiffs wished, the Court would

---

[3] *Amicus curiae* Council of Parent Attorneys and Advocates ("COPAA") wrongly states that Plaintiffs had "sought an administrative remedy when *directed to do so by the Court*" and was "*forced* to return to the

have dismissed the Complaint outright under *Fry*, with no opportunity to exhaust under the IDEA. The parties subsequently filed a joint motion to stay the case pending exhaustion pursuant to the IDEA. ECF No. 21. The Court granted the stay motion pending exhaustion and denied as moot the motions to dismiss and for preliminary injunction without prejudice to refile. ECF No. 24.

Plaintiffs' next move, candidly, was at odds with their having sought a stay to exhaust administrative remedies. Plaintiffs filed a due process complaint with the Maryland Office of Administrative Hearings, but then expressly notified the Administrative Law Judge ("ALJ") that they were *not* pursuing an IDEA claim. ECF Nos. 26-1, 26-5. Instead, Plaintiffs contended in the due process proceedings that MCPS denied K.M. reasonable accommodations under the ADA. *Id.* Consequently, the ALJ ultimately granted MCPS' motion for summary decision, finding that because "the Parents are not challenging . . . whether [K.M.] received FAPE," under the IDEA, "there is nothing to be accomplished in a due process hearing." ECF No. 26-9 at 12.

Plaintiffs then amended their Complaint in this court, asserting that "Plaintiff has exhaust[ed] administrative remedies under the [IDEA]." ECF No. 30 at 2. Plaintiffs also added a companion claim to the ADA for a violation of § 504 of the Rehabilitation Act ("§ 504"). 29 U.S.C. §§ 701 *et seq*. MCPS once again moved to dismiss the Amended Complaint, contending that Plaintiffs failed to exhaust administrative remedies and failed to state a claim. ECF No. 32.

---

administrative proceeding." ECF No. 36-1 at 3, 13 (emphasis added). These misrepresentations of the record leave the Court wondering whether *amicus* had reviewed the recorded status conferences between the parties and the joint motion to stay the case, as it should have done prior to filing its brief. *See* ECF No. 21 ("Judge Xinis *offered* to stay the proceedings *if* Plaintiff decided to exhaust administrative remedies through a Due Process Hearing. Plaintiff hereby agrees to file a Due Process Complaint with the Maryland Office of Administrative Hearings. WHEREFORE, the parties respectfully request that this Honorable Court grant their joint motion to stay.") (emphasis added).

With permission of the Court, *amicus curie* Council of Parent Attorneys and Advocates ("COPAA") filed a brief in support of K.M. ECF No. 36.

## II. Standard of Review

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).[4] A court may also consider documents to the complaint as exhibits, *see* Fed. R. Civ. P. 10(c), and documents "submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

---

[4] MCPS frames its failure to exhaust administrative remedies challenge as implicating this Court's subject matter jurisdiction. ECF No. 34. However, because MCPS contends that the Complaint fails to allege facts giving rise to subject matter jurisdiction, K.M. "is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Accordingly, the standard of review in this respect is the same whether the Court construes this motion as formally one brought under Rule 12(b)(1) or Rule 12(b)(6). *See Reid v. Prince George's Cty. Bd. of Educ.*, 60 F. Supp. 3d 601, 605 (D. Md. 2014).

### III. Analysis

#### A. The Amended Complaint

In the Amended Complaint, Plaintiffs allege solely violations of the ADA (Count I) and § 504 (Count II). Accordingly, consistent with the teachings of *Fry*, the Court must first examine the substance of the Amended Complaint to determine whether, at bottom, Plaintiffs' claims seek relief available under the IDEA. 137 S. Ct. at 752.

In *Fry*, the high Court was called to decide whether a physically disabled student whom the public school denied the use of her service dog could pursue her discrimination claims solely under the ADA and § 504, thus avoiding the IDEA's administrative exhaustion requirements. *Id.* at 752. The *Fry* Court began by describing the statutory and remedial scheme of the IDEA. "The IDEA," explained the Court, "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry*, 137 S. Ct. at 748 (citing 20 U.S.C. § 1412(a)(1)(A)).[5] Importantly, a FAPE includes access to education through "supportive services." 20 U.S.C. § 1401(26)(a). Schools implement a FAPE for each child through an Individualized Education Program ("IEP"), which is created and periodically modified via the collaborative efforts of teachers, school officials, and the child's parents. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017).

The *Fry* Court next reviewed the IDEA's "formal procedures" that parties must follow prior to filing suit in federal regarding the provision of a FAPE. *Fry*, 137 S. Ct. at 749 (citing § 1415). Disputes concerning the provision of a FAPE are first addressed at a "preliminary

---

[5] A FAPE is defined as "meaningful access to the educational process" in "the least restrictive environment" and is "reasonably calculated to confer some educational benefit." *M.C. v. Starr*, No. DKC 13-3617, 2014 WL 7404576, at *1 (D. Md. Dec. 29, 2014) (internal marks and citations omitted).

6

meeting" or in mediation. 20 U.S.C. §§ 1415(f)(1)(B)(1); (e). If the dispute is not resolved, the parents may file a "due process complaint" and be heard by a neutral hearing officer, who must decide whether the child is receiving a FAPE. *Id*. at § 1415(f)(3)(E)(i). Only after such administrative relief has been exhausted may either party seek judicial review of the hearing officer's determination by filing a federal claim. *Id.* at §§ 1415(g)(1), (i)(2)(A). *See Fry*, 137 S. Ct. at 749.

The *Fry* Court then discussed the passage of the Handicapped Children's Protection Act of 1986, now codified at 20 U.S.C. § 1415(l), which critically clarified that the IDEA was not intended to preclude § 504 or ADA claims filed in federal court, even if those claims also implicate denial of a FAPE. *Id.* at 750.[6] However, where the plaintiff seeks relief under the ADA or § 504 "that is also available under" the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures before pursuing her claims in federal court. *Id.* By contrast, if a plaintiff's ADA or § 504 claims do not seek relief also available under the IDEA, the plaintiff need not exhaust remedies under the IDEA before filing federal suit.

Against this statutory backdrop, the *Fry* Court provided important guidance as to how lower courts should determine whether an ADA or similar claim is seeking relief "also available under" the IDEA, thus triggering exhaustion. To make such a determination, lower courts must

---

[6] The relevant provision of the statute reads:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(l). This legislation was passed in response to *Smith v. Robinson*, 468 U.S. 992 (1984) which had held that the Education for All Handicapped Children Act (EHA), IDEA's predecessor, provided the exclusive remedy for disability related claims in the educational context.

7

look to "the 'substance' of, rather than the labels used in, the plaintiff's complaint . . . setting aside any attempts at artful pleading." *Id.* at 755. "When the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way," then the IDEA's administrative exhaustion requirement is triggered. *Id.* Lower courts "must therefore examine whether a plaintiff's complaint . . . seeks relief for the denial of an appropriate education," regardless of whether the claims are brought in the name of any particular anti-discrimination statute or common law cause of action. *Id.*

In considering a complaint's "substance, not surface," courts should pay less attention to whether the complaint includes such IDEA buzzwords as "FAPE "or "IEP," but instead focus on whether the relief sought concerns, at base, denial of a FAPE. *Id.* In doing so, courts may pose the rhetorical question as to whether the same claims could be brought against "a public facility that was *not* a school," or whether an adult at the school, "say, an employee or visitor" could have "pressed essentially the same grievance." *Id.* at 756 (emphasis in original). When the answer to such questions is "no" as to the viability of such hypothetical claims, "then the complaint probably does concern a FAPE," because it is only in an educational setting involving a child that the claim makes sense. *Id. See Tawes v. Bd. of Educ. of Somerset Cty.*, No. RDB-17-2375, 2017 WL 6313945, at *5 (D. Md. Dec. 11, 2017). With *Fry's* guidance in mind, this Court turns to the Amended Complaint.

The Court finds that the heart of the Amended Complaint concerns MCPS' denial of appropriate educational services for K.M. and seeks relief available under the IDEA. ECF No. 30. The Amended Complaint first focuses on facilitated communication as part of MCPS' program for some younger autistic students. *Id.* ¶¶ 12-15. The Amended Complaint then makes the robust case that K.M. requires a communication facilitator skilled in RPM, "especially as she

8

starts to learn in the *general education curriculum*," because "K.M. *has huge gaps in her learning*, has a lot to get caught up on, and seems to be asking for the challenge." *Id.* ¶¶ 22, 24 (emphasis added). Indeed, the Amended Complaint extols the virtues of a communication facilitator using a laminated letterboard precisely because K.M. could achieve such educational milestones as reading and discussing *The Great Gatsby* and *Animal Farm*. *Id.* ¶ 25. As partial relief, Plaintiffs ask that K.M. "receive compensatory educational services in order to place her in the same position she would have been in had MCPS complied with its obligations . . . ." ECF No. 30 at 11.[7]

Clearly, Plaintiffs "seek relief for the denial of an appropriate education." *Fry,* 137 S. Ct. at 175. The gravamen of Plaintiffs' claims is that without this particular facilitated communication in the educational setting, K.M. is denied an educational program necessary to achieve age-appropriate educational milestones. ECF No. 30 ¶¶ 22-24. In this respect, the Court cannot fathom how Plaintiffs could sue a library, community center or courthouse for an ADA or a § 504 violation for failure to provide K.M. a trained, certified RPM facilitator for their autistic visitors. Nor can the Court craft a viable cause of action for a non-student adult visitor at Walter Johnson High School denied RPM as a reasonable accommodation. According to the Amended Complaint, K.M. seeks facilitated communication to access an adequate education. *Cf. Fry*, 137

---

[7] Although this Court focuses, as it must, on substance and not labels, it cannot go unnoticed that Plaintiffs ask for "compensatory educational services." ECF No. 30 at 11. Compensatory education is an IDEA term of art to describe "discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." *G ex rel. RG v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 309 (4th Cir. 2003). "Whether [Plaintiff] is entitled to a compensatory education award *necessarily* hinges on an assessment of the adequacy of the . . . IEP. And the need for this assessment is the very reason exhaustion is a prerequisite to filing a civil action." *James v. Frederick Cty. Pub. Sch.*, 441 F. Supp. 2d 755, 760 (D. Md. 2006) (emphasis in original). The Court notes that at the hearing, Plaintiffs raised for the first time that they alternatively wish to provide their own, privately hired communication facilitator to aid K.M. during school. Plaintiffs have not averred that M.C.P.S. denied K.M. reasonable accommodation by refusing to allow K.M.'s private facilitator to assist K.M. during the school day. Should Plaintiffs wish to pursue this newly conceived claim, counsel must seek reconsideration and leave to amend the operative complaint.

9

S. Ct. at 756 (the gravamen of the ADA claim of a wheelchair-bound student because his school building lacks access ramps is "equality of access to public facilities, not adequacy of special education").

This Court therefore finds that K.M.'s claim is for relief available under the IDEA "for the denial of an appropriate education." *Id.*, 137 S. Ct. at 755. *See Z.G. by & through C.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 778–79 (4th Cir. 2018) (holding the ADA and § 504 claims of a student diagnosed with autism and ADHD subject to the IDEA's administrative exhaustion requirement because "the crux of these claims is an effort to alter Z.G.'s educational placement [and] secure certain educational services"); *Tawes v. Bd. of Educ. of Somerset Cty.*, No. RDB-17-2375, 2017 WL 6313945, at *5 (D. Md. Dec. 11, 2017) (finding that because the gravamen of Plaintiff's claims of negligence, negligence *per se*, violation of Title VII, and education malpractice was the denial of a FAPE, the IDEA's exhaustion requirement applied); *Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-CV-578-D, 2018 WL 4515877, at *6 (E.D.N.C. Sept. 20, 2018) (finding that the IDEA exhaustion requirement applied to ADA, § 504, and § 1983 claims because "Plaintiffs' claims are uniquely tied to the school environment and to [Plaintiff child's] status as a student within the school. Plaintiffs could not bring substantially the same claims against other public facilities.").

Plaintiffs may pursue their ADA and § 504 claims, therefore, only if they first exhaust administrative remedies under the IDEA. For the following reasons and despite Plaintiffs' claims to the contrary, ECF No. 37, Plaintiffs have failed to so exhaust.

### B. Failure to Exhaust

MCPS primarily contends that Plaintiffs failed to exhaust administrative remedies by baldly asserting in their due process complaint that Plaintiffs only seek relief under the ADA. ECF No. 32-1 at 10. The Court agrees.

Because Plaintiffs' litigation strategy thus far is confounding, it bears brief repeat here. The Court initially informed counsel that it intended to dismiss the action based on the *Fry* analysis articulated above. Instead of outright dismissing, the Court offered to stay the case so that Plaintiffs could exhaust administrative remedies and thus preserve the claims as filed. As Plaintiffs conceded at the hearing, this Court had not "ordered" Plaintiffs to exhaust, and had Plaintiffs chosen otherwise, the Court would have simply dismissed the case for the same reasons articulated in this opinion.

Plaintiffs instead sought a stay pending exhaustion (ECF No. 21), then did not meaningfully participate in the due process hearing. They made no showing as to whether MCPS' refusal to provide the requested facilitated communication denied K.M. FAPE, and instead claimed that the alleged deprivations did not implicate the IDEA. ECF No. 26-5. Because Plaintiffs maintained that their due process complaint did not concern the provision of a FAPE, the ALJ concluded that "there is nothing to be accomplished in a due process hearing." ECF No. 26-9 at 12. Plaintiffs, therefore, ended up essentially where they began—with the Amended Complaint poised for outright dismissal having failed to exhaust administrative remedies.

This is so because Plaintiffs could only bring their ADA and § 504 claims if they first meaningfully exhausted administrative remedies under the IDEA. The IDEA's exhaustion requirement "is not merely a pleading hurdle." *Fry*, 137 S. Ct. at 755. Instead, it "serves the

important purpose of allowing states to use their special expertise to resolve educational disputes." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.,* 773 F.3d 509, 514 (4th Cir. 2014) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 208 (1982)); *see also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 60 (1st Cir. 2002) ("The IDEA's administrative machinery places those with specialized knowledge—education professionals—at the center of the decisionmaking process, entrusting to them the initial evaluation of whether a disabled student is receiving a free, appropriate public education.").

Meaningful exhaustion requires more than paying lip service to the process. *See T.O. by & through Hayes v. Cumberland Cty. Bd. of Educ.*, No. 5:16-CV-853-FL, 2017 WL 979025, at *5 (E.D.N.C. Mar. 13, 2017), *aff'd*, 696 F. App'x 640 (4th Cir. 2017) ("[T]he ALJ . . . made no findings regarding the substance of plaintiffs' IDEA claims. Accordingly, the court does not have jurisdiction to hear the merits of the plaintiffs' claims."). *See also E.L. ex rel. Lorsson*, 773 F.3d at 516 (a cursory finding by a neutral IDEA review officer "did not satisfy [plaintiff]'s obligation to exhaust her administrative remedies," because when plaintiff had failed to properly bring her administrative case, "there was nothing for the review officer to consider"). At this due process hearing, "a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). The burden of proof lies on the party seeking relief—here K.M.'s parents— to demonstrate that the student is being denied FAPE. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (applying "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims"). Parents may be represented by counsel, offer evidence, call experts, compel witness testimony, and confront and cross-examine witnesses called by the School, all to satisfy their burden of demonstrating denial of FAPE. § 1415(h).

Plaintiffs argued that MCPS' refusal to provide K.M. her preferred communications facilitation technique violated the ADA and clarified that they were not alleging any denial of FAPE.  ECF No. 26-1 at 8.  As a result, the ALJ, tasked by law with determining whether K.M. received a FAPE, had nothing to resolve.  Because Plaintiffs have failed to exhaust administrative remedies, the case must be dismissed.

Plaintiffs' reverse logic does not save their claims.  Plaintiffs argue that because this Court essentially viewed the Complaint allegations as implicating the IDEA, then the ALJ would similarly reach the merits of the IDEA claim, regardless of whether Plaintiffs actually demonstrated that MCPS' refusal to provide RPM denied K.M. a FAPE.  ECF No. 37 at 7.  This position makes little sense and, if credited, invites havoc into the administrative exhaustion process.  If every time a federal court determined that claims formally brought under the ADA or § 504 were functionally IDEA claims, then under Plaintiffs' logic, parents could simply maintain before the ALJ that the school violated the ADA or § 504, and then return to federal court having completely sidestepped exhaustion.  As a practical matter, *Fry* would be rendered meaningless.  This the Court will not do.

**IV.    Conclusion**

In sum, Plaintiffs failed to exhaust administrative remedies under IDEA.  The Amended Complaint, therefore, must be dismissed for failure to exhaust administrative remedies.  Defendant Board of Education of Montgomery County's motion is GRANTED.  A separate Order follows.

1/25/2019_____                                            _____/S/_____
Date                                                                                    Paula Xinis
                                                                                           United States District Judge